

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DENNIS DANIELS, et al.,                    )
                                           )
           Plaintiffs,                     )
                                           )    No. 98 C 1186
     v.                                    )
                                           )    Judge William J. Hibbler
FEDERAL RESERVE BANK OF                    )
CHICAGO                                    )
                                           )
           Defendant.                      )

## MEMORANDUM OPINION AND ORDER

Defendant, Federal Reserve Bank of Chicago ("Bank"), seeks summary judgment on the

Amended Class Action Complaint ("Complaint") against plaintiffs: Leydell Smith, Frances Smith,

and Eleanor Baylie (collectively "Plaintiffs"). Both parties have also filed motions to strike certain

exhibits and Rule 56.1 responses.

On February 25, 1998, eight current and former African-American employees of the Bank

filed a complaint alleging that the Bank discriminated against them on the basis of their race. On

June 18, 1998, the Complaint was amended to add plaintiffs, amongst others, Leydell Smith and

Frances Smith, and the Title VII race discrimination claim. Count I comprises Plaintiffs' Leydell

Smith and Frances Smith only surviving claim against the Bank.[1] Plaintiff Eleanor Baylie claims

comprise of Counts I, IV, VII, and VIII. Count IV and Count VII allege discrimination based on race

and gender discrimination claim in violation of Title VII, and Count VIII alleges discrimination

based on age in violation of the Age Discrimination in Employment Act ("ADEA").

---

[1] These Plaintiffs did not file charges of discrimination with the EEOC and thus have not
asserted a Title VII claim under Count IV.

The Court decertified the class on May 2, 2002, and returned the case to the status of individual claims, thus Counts III and VI of the Complaint are class actions claims that are no longer viable since the class was decertified. The remaining Plaintiffs - Leydell Smith, Frances Smith and Eleanor Baylie and Defendant - have fully briefed the issues and this case is now ripe for ruling.

Count I of the Complaint alleges that:

Federal Reserve intentionally subjected Plaintiffs to unequal and discriminatory treatment because of their race and color by: (a) Repeatedly denying them promotions and instead selecting less qualified white employees for those positions; (b) Steering Plaintiffs to low-level, dead-end positions while steering white employees to career path positions with opportunities for advancement; (c) Falsely representing that such low-level positions have growth potential; (d) Excluding Plaintiffs from officer, management, and supervisory level positions; (e) Denying Plaintiffs increases in Grade Level to reflect their performance and responsibilities; (f) Assigning higher grade levels to white employees who have the same or similar or lower level responsibilities as Plaintiffs; (g) Denying Plaintiffs training and mentoring opportunities; (h) Subjecting Plaintiffs to a higher level of scrutiny and to stricter standards than white employees; and (i) Paying Plaintiffs less than similarly situated and less qualified white employees.

Plaintiffs claim that these alleged actions by the Bank constitute racial discrimination in employment in violation of 42 U.S.C. §1981. In addition, plaintiff Eleanor Baylie alleges several other claims against the Bank. Specifically, Count IV of the Complaint states that: ""Federal Reserve intentionally subjected . . . Eleanor Baylie . . . to unequal and discriminatory treatment because of their race and color. Federal Reserve's employment practices have a disproportionate, adverse impact on plaintiffs and other African-Americans." Baylie claims that these actions constitute race discrimination of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e st seq. In Count VII Baylie alleges that the Bank further acted in violation of Title VII, and "intentionally subjected Plaintiff Baylie to unequal and discriminatory treatment because of her gender." Count VIII claims that the "Federal Reserve intentionally subjected Plaintiff Baylie to unequal and

2

discriminatory treatment because of her age" in violation of 29 U.S.C. §621, et seq., as amended. As the legal issues in each of Plaintiffs' cases are substantially overlapping, the Court will address each of the pending summary judgment motions in this opinion.

## I.   Facts Specific To Certain Plaintiffs

### A.    Leydell Smith[2]

The Bank hired Leydell Smith ("L. Smith") in November 1974 as a mail assembly clerk, grade 4, in the Check department. He received his first promotion in May 1975 to a check clerk, grade 5, and his second promotion less than a year later in February 1976 to a sorter/greeter/operator, grade 6. L. Smith received three subsequent promotions in 1977, 1981, and 1982 to an assistant supervisor, grade 10, which in the early 1980s was converted to an equivalent grade 56. In January 1986, he received a promotion to check department p.m. supervisor, grade 57. The Bank changed its grading system a second time, and L. Smith received a promotion to a grade 12 supervisor B, equivalent to grade 58 supervisor position. In 1995 or 1996, the Bank transferred L. Smith to a supervisor in charge of the receiving area on the p.m. shift, however, he retained the same job grade and salary that he had prior to his transfer. The Bank terminated L. Smith in May 2001 for failure to follow departmental procedure.

### B. Frances Smith

The Bank hired Frances Smith ("Frances Smith") in January 1977 as a Staff Assistant, grade 9, in the Supervision and Regulation Department (S&R). In 1978, F. Smith received a promotion to an Assistant Examiner position, grade 10. F. Smith received several promotions throughout the

---

[2] Leydell Smith did not file a response to defendant's motion for summary judgment. Accordingly, defendant's 56.1(b) Statement of Facts is deemed admitted. N.D. Ill. L.R. 56.1(b); *Smith v. Lamz*, 321 F.3d 680, 682-83 (7th Cir. 2003).

years, and in 1987 was promoted an Examiner, grade 14. The Bank's numbered grading system changed, and in January 1992, F. Smith applied for and received a lateral transfer to a Review Examiner position, grade 60. In April 1994, the Bank promoted Frances Smith to a Senior Grade Examiner, grade 61. In 1995, the Bank again changed its numerical job grading scheme, and Smith's job was reclassified as a grade 13, Examiner A, the position Smith currently holds.

### C. Eleanor Baylie

Eleanor Baylie ("Baylie") was born on April 18, 1946. In February 1964, the Bank hired Baylie as a part-time proof machine operator, grade 2. In June 1964, Bank hired Baylie full-time and promoted her to a grade 4. Over a period of twenty-four years, Baylie performed a variety of different positions in different departments in the Bank. In July 1988, Baylie was promoted to a report analyst, grade 9, in the Supervision and Regulation Department. Around January 1991, Baylie laterally transferred to the position of Examiner Resource Center, grade 9. In June 1994 through June 1995, Baylie performed the duties of Examiner Resources Center and Document Manager, grade 9. Currently, Baylie works as a production specialist 3, grade 9, in the Supervision and Regulation Department.

## II. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The

4

initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Once the moving party has met its initial burden, the opposing party must "go beyond the pleadings" and "designate specific facts showing that there is a genuine [material] issue for trial." *Id.* The non-moving party cannot create an issue of fact with speculation or conjecture. *Borcky v. Maytag*, 248 F.3d 691, 695 (7th Cir. 2001). During its summary judgment analysis, the court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560 (7th Cir. 1996).

### III. Untimely Allegations of Discrimination

#### A. §1981

Each of the Plaintiffs allege certain acts of discrimination that occurred outside the time period of the relevant statutes of limitations. Leydell Smith, Frances Smith, and Baylie allege § 1981 violations. The statute of limitations for claims arising under an Act of Congress enacted after December 1, 1990, is four years. 28 U.S.C.A. § 1658(a). This limitations period applies to claims arising under the amendment to Section 1981 contained in the Civil Rights Act of 1991. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 124 S. Ct. 1836, 1845-46 (2004). Therefore, Plaintiffs are barred from raising claims of discrimination under § 1981 for alleged adverse acts that occurred before February 25, 1994, four years before the complaint was filed. Untimely discriminatory acts may only be considered for background purposes. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002).

## B. Title VII and ADEA

In addition to her § 1981 claim, Baylie alleges race and gender discrimination in violation of Title VII.[3] Title VII sets forth the relevant time for filing charges as follows:

> . . . in case of an unlawful employment practice with respect to which the person has initially instituted proceeding with a State or local agency with authority to grant or seek relief from such practice or institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved withing three hundred days after the alleged unlawful employment practice occurred. . . .

42 U.S.C.A. § 2000e-5(e)(1). Similarly, in order to have an ADEA claim of age discrimination considered by the court, one must timely file a charge with the EEOC. *See* 29 U.S.C. § 626(d); *Hamilton v. Komatsu Dresser Indus., Inc.*, 964 F.2d 600, 603 (7th Cir. 1992). "In a deferral state such as Illinois, an ADEA plaintiff must file an EEOC charge 'within 300 days after the alleged unlawful practice occurred . . .'" *Id.* (quoting 29 U.S.C. § 626(d)(2)). A claim is time-barred if it is not filed withing these time limits. *Morgan* at 109. "According to statute, a plaintiff in a deferral state such as Illinois must file a charge of discrimination with the EEOC or equivalent state agency within 300 days after the alleged unlawful employment practice. The 300-day limit . . . begins to run when the defendant has taken the action that injures the plaintiff and when the plaintiff knows she has been injured, . . . not when [the plaintiff] determines that the injury was unlawful." *Sharp v. United Airlines, Inc.*, 236 F.3d 368, 372 (7th Cir. 2001)(internal citations omitted).

Discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period. *Morgan*, 536 U.S. at 112. The Supreme Court held that:

---

[3] Because the statute of limitations for claims alleging discrimination based on race is longer for claims brought pursuant to § 1981 in comparison to Title VII, the Court will analyze Baylie's claims for race discrimination under § 1981's four-year statute of limitations.

First, discrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging the act. The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred. The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed.

*Id.* at 113. Discrete discriminatory acts includes acts such as termination, failure to promote, denial of a transfer, or refusal to hire. *Id.* at 114. Title VII does not "bar an employee from using the prior acts as background evidence in support of a timely claim." *Id.*

In this case, Plaintiff Baylie filed her EEOC charges alleging discrimination on February 17, 1998. Therefore, discriminatory acts based on race or age that allegedly occurred before April 23, 1997, 300 days before the charges were filed, are not actionable under Title VII and the ADEA.

## IV. Test for Discrimination

The Bank claims that summary judgment is proper against Plaintiffs because they have failed to establish a *prima facie* case of discrimination. Under § 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to the full and equal benefit of all laws . . . as is enjoyed by white citizens." 42 U.S.C. § 1981. Under Title VII , it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, . . . or to segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1-2). In addition, the ADEA provides that

it is unlawful for any employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff alleging employment discrimination under Title VII or the ADEA may prove her claims of intentional discrimination under the direct or indirect method. *Peele v. Country Mutual Ins. Co.*, 288 F.3d 319, 326 (7th Cir. 2002); *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616-17 (7th Cir. 2000). Moreover, when a plaintiff alleges intentional discrimination, as in this case, § 1981 actions have the same liability standards, and are analyzed in the same manner, as Title VII actions. *Eiland v. Trinity Hosp.*, 150 F.3d 747, 750 (7th Cir. 1998).

As stated, a plaintiff alleging race discrimination must prove his or her claims using direct or indirect evidence. "[D]irect evidence essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus." *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060-61 (7th Cir. 2003). Under the direct method of proof, a plaintiff may present direct evidence--evidence which, "if believed by the trier of fact, will prove the particular fact in question without reliance on inference or presumption." *Cowan v. Glenbrook Security Servs., Inc.*, 123 F.3d 438, 443 (7th Cir. 1997) (quoting *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 347 (7th Cir. 1997)) (internal quotation marks omitted). It is direct evidence that can be interpreted as an acknowledgment of a defendant employer's discriminatory intent. *See Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). This evidence "must not only speak directly to the issue of discriminatory intent, it must also relate to the specific employment decision in question." *Cowan*, 123 F.3d at 443.

Under the indirect method, a plaintiff must first establish a *prima facie* case of discrimination. A *prima facie* case requires a showing that: (1) the plaintiff is a member of a

protected class; (2) the plaintiff was qualified for the job or was meeting the employer's legitimate expectations; (3) the plaintiff suffered an adverse employment action; and (4) the employer treated similarly situated employees outside of the protected class more favorably. *Jordan v. City of Gary*, 396 F.3d 825, 833 (7th Cir. 2005).

If the plaintiff satisfies the burden of proving a prima facie case, "a presumption of discrimination arises, and the burden shifts to the defendant to come forward with evidence of a 'legitimate, nondiscriminatory reason' for discharging the plaintiff." *Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 394 (7th Cir. 1998)(*quoting Testerman v. EDS Technical Prods. Corp.*, 98 F.3d 297, 302-03 (7th Cir. 1996). If the defendant meets this requirement, the plaintiff employee then must show that the employer's proffered reason is pretextual. The Court need not analyze whether Defendant Bank provides legitimate, non-discriminatory reasons for its actions because Plaintiffs fail to establish a *prima facie* case of discrimination.

## V.   Leydell Smith

Leydell Smith alleges that several incidents of race discrimination occurring after February 25, 1994, the relevant limitations period. L. Smith alleges that he was discriminatorily denied a promotion to: (a) a Manager position of float analysis and cash letter monitoring in 1996 that went to Chris Delapina; and (b) a Manager position that went to Lavernis Williams in 1997. Leydell Smith also claims that, on account of race, he was required to work extra hours, received an inaccurate annual review, was transferred to a p.m. shift supervisor position and a customer service liaison/float analyst position, received an inflexible schedule with regard to vacation time and working on the weekends, was excluded from meetings, was forced to attend a Microsoft Access class, failed to receive a bonus in 1997, and received an unequal salary.

9

## A.    Failure to Promote

When a race discrimination plaintiff alleges a failure to promote, he must show: (1) he is a member of a protected group; (2) he was qualified for the position sought; (3) he was rejected; and (4) the employee promoted was not a member of the protected group and was not better qualified than the plaintiff. *Johnson v. Nordstrom*, 260 F.3d 727, 732 (7th Cir. 2001). Leydell Smith claims that he was not promoted to both managerial positions in 1996 and 1997, on account of his race. L. Smith, however, fails to identify any of the job requirements for either position, and thus cannot show that he met the position requirements. *Bennet v. Roberts*, 295 F.3d 687, 696 (7th Cir. 2002)(holding that [t]he comparisons are meaningless absent some information concerning the hiring criteria for these positions.). Next, with respect to the manager of float analysis and cash letter monitoring position, L. Smith fails to show that he even applied for and was rejected for that position. In order to establish a material adverse action in the failure-to-promote context, the plaintiff must show that he was rejected for that position. *Grayson v. City of Chicago*, 317 F.3d 745, 748 (7th Cir. 2003). Leydell Smith also fails to identify the qualifications of Delapina who received the float analysis and cash letter monitoring manager position. "It is fundamental that to make a comparison of a discrimination plaintiffs's treatment to that of non-[African-American] employees, the plaintiff must show that the 'comparables' are similarly situated in *all respects*." *Spath v. Hayes Wheels, Int'l-Indiana, Inc.*, 211 F.3d 392, 397 (7th Cir. 2000)(emphasis in original). A failure to offer such "comparables" dooms a plaintiff's Title VII claim and obviates the need to address his particularized allegations of disparate treatment. *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 331 (7th Cir. 2002). L. Smith acknowledges that he does not know anything about Delapina's educational background, qualifications, or prior work experiences. Finally, with respect to the

10

managerial position attained by Lavernis Williams, as stated previously, L. Smith again fails to claim

that he applied for the position or identify the position requirements. Leydell Smith's claim further

fails as Williams is African-American, and thus he is unable to demonstrate that the promoted

employee was not a member of the protected group.

## B.    Other Claims of Discrimination

Leydell Smith also claims that, on account of race, he was (I) required to work more hours

as a p.m. shift supervisor; (ii) received an inaccurate annual review in 1996; (iii) received a transfer

to the p.m. shift supervisor position and later to customer service liaison/float analyst position; (iv)

received an inflexible schedule which required him to coordinate his vacation with non-supervisory

employees and work on Saturdays; (v) excluded from meetings; (vi) required to attend a Microsoft

Access class; (vii) failed to receive a bonus in 1997; and (viii) received a lower salary.

The Seventh Circuit defines an adverse employment action as:

> ... more disruptive than a mere inconvenience or an alteration of job responsibilities.
> A material adverse change might be indicated by a termination of employment, a
> demotion evidenced by a decrease in wage or salary, a less distinguished title, a
> material loss of benefits, significantly diminished material responsibilities, or other
> indices that might be unique to a particular situation. ... [N]ot everything that makes
> an employee unhappy will suffice to meet the adverse action requirement. Rather,
> an employee must show that material harm has resulted from the challenged actions.

*Traylor v. Brown*, 295 F.3d 783, 788-89 (7th Cir. 2002) (internal citations omitted).  None of these

actions with regard to Leydell Smith constitute materially adverse employment actions as a matter

of law because no material harm resulted from the challenged actions. *Traylor*, 295 F.3d at 788-89.

(i) Extra hours

First, Leydell Smith's argument that he was discriminated against because he was assigned

11

to work extra hours does not amount to a material adverse employment action under *Traylor*. In 1996, the Bank reduced the number of p.m. shift supervisors, and two other p.m. supervisors were moved to other assignments. L. Smith was the only remaining supervisor on the p.m. shift, and as a result was required to work extra hours. L. Smith admits that he is unaware of the schedule maintained by the other two transferred supervisors in their new assignments. In addition, Leydell Smith fails to show that he was held to a different standard than similarly non-protected employees.

(ii)1996 Annual Review

Leydell Smith believes that his performance rating of "met expectations" in his 1996 review was discriminatory. "A supervisor's assessment of an employee's skills is not an adverse employment action." *Braff v. Navistar Int'l Transp. Corp.*, 164 F.3d 373, 378 (7th Cir. 1998). In addition, L. Smith acknowledges that after he discussed his review with his supervisors, they changed the evaluation with respect to certain performance evaluations, thus Smith suffered no adverse employment action. *Traylor*, 295 F.3d at 788-89. L. Smith further claims that several other employees - Sue Kenny, Steve Buffo, Allen Novak, Cathleen Howard, Sandy Gad, and Sue Nevin/Petruska - received higher ratings on their evaluations although they did not perform as well as he did. Leydell Smith never reviewed the evaluations of these individuals, and admitted that he knows nothing of their reviews. As such, L. Smith does not offer facts that he was similarly-situated to these employees. *Spath*, 211 F.3d at 397.

(iii) Transfers

Leydell Smith admits that his transfer to the p.m. shift supervisor position was not a demotion, but argues he regarded the transfer as a form of punishment. L. Smith, however, retained the same job grade, salary, benefits, and job title with the transfer. Under *Traylor*, Smith must show

12

that he faced "significantly diminished material responsibilities" in his new position. *Traylor*, 295 F.3d at 788-89. He further claims that his subsequent transfer to the Customer Service/Analyst position is evidence of discriminatory animus because he and another African-American supervisor were the only employees transferred from supervisory positions. Again, while Leydell Smith's title changed; his job grade, salary, and benefits did not change with the transfer. In addition, the two p.m. supervisory positions were filled with two other African-Americans. Leydell Smith also fails to identify similarly situated Caucasian employees who were treated differently.

(iv) Work Schedule

In 1996, when the Bank transferred Leydell Smith to the Customer Service/Analyst position, he was required to work every other Saturday, along with non-supervisory employees. In 1998, Smith complained about his vacation schedule and working on Saturdays. In response, the Bank transferred Leydell Smith to the day shift where he was no longer required to work on Saturdays and could schedule vacations whenever he wanted as long as his assignments were completed. While assigned to the day shift L. Smith was no longer entitled to receive the night shift pay premium; however, Smith's grade, base salary, or benefits were not affected. Thus, Smith fails to demonstrate that this alteration in his schedule was materially adverse. *Traylor*, 295 F.3d at 788-89.

(v) Exclusion from meetings

Leydell Smith claims he was discriminated against by being excluded from meeting. Specifically, L. Smith alleged he was excluded from one meeting with LaSalle Bank in 1998, however, he fails to identify any other meetings from which he was excluded. L. Smith acknowledged that no individual informed him that he could not attend a meeting, and he offers no other factual evidence to support his allegation. L. Smith does not show that any material harm

13

resulted from these actions, and thus fails to establish a *prima facie* case. *Traylor*, 295 F.3d at 788-89.

### (vi) Microsoft Access class

Leydell Smith alleges that he was the only supervisor required to take a Microsoft Access class. L. Smith fails to demonstrate that undertaking this training materially affected his employment, and further fails to show that similarly situated non-African American employees were treated differently.

### (vii) 1997 Bonus

Leydell Smith also claims that he was discriminated against on the basis of race when he did not receive a bonus from the Bank in 1997. In 1997, several employees in the Check department received bonuses for "highly effective performance" and going above and beyond their job. While L. Smith identified Maria Georgia Shaffer and Veronica Upshire as employees receiving bonuses in 1997, Smith's failure to receive a bonus does not constitute an adverse employment action. "[T]he denial of a monetary perk, such as a bonus or reimbursement of certain expenses, does not constitute an adverse employment action if it is wholly within the employer's discretion to grant or deny and is not a component of the employee's salary." *Tyler v. Ispat Inland Inc.,* 245 F.3d 969, 972 (7th Cir. 2001); *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1006 (7th Cir. 2000)(holding that denial of a bonus was not an adverse employment action). Additionally, Leydell Smith fails to proffer any evidence that he was similarly situated to Shaffer and Upshire.

### (viii) Salary

Leydell Smith alleges that comparable Caucasian employees: Steve Buffo, Bonnie Dolan, Allen Novak, Cathlee Howard, and Lisa White, earned higher salaries solely because of their race.

14

In general, a claim of disparate pay is sufficient to show an adverse employment action. In the wage discrimination context, a *prima facie* case requires the plaintiff to show that he was paid less than a similarly situated person outside of the protected class. *See Johnson v. Wisconsin - Eau Claire*, 70 F.3d 469, 478 (7th Cir. 1995). Smith has proffered no facts demonstrating that he was similarly situated to Buffo, Dolan, Allen, Novak, Howard, or Lisa White. *Spath*, 211 F.3d at 397. Indeed, Leydell Smith also fails to present any evidence as to any of these individuals work performance, qualifications, or seniority. *Radue*, 219 F.3d at 617-18.

### C.    Retaliatory Discharge

Finally, Leydell Smith contends that the Bank discharged him in retaliation for his participation in the instant litigation. A plaintiff may establish a *prima face* case of retaliation in two ways, directly or indirectly. *See Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640 (7th Cir. 2002). With the direct method, an employee must establish a *prima facie* case of retaliation by showing that (1) she engaged in statutorily protected expression; (2) she suffered an adverse action; and (3) there is a causal link between the protected expression and the adverse action. *Eiland v. Trinity Hosp.*, 150 F.3d 747, 753 (7th Cir. 1998)(citation omitted). With the indirect method, to prove a *prima facie* case of retaliation, a plaintiff must show that: (1) he engaged in protected activity; (2) he performed his job according to his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Haywood v. Lucent Tech.*, 323 F.3d 524, 530 (7th Cir. 2003).

Leydell Smith's claim of retaliation fails under either method. Under the direct method, in order to demonstrate the "causal link," the plaintiff must demonstrate that the employer would not

have taken the adverse action "but for" the protected expression. *University of Wisconsin-Eau Claire*, 70 F.3d at 479. "And the substantial time lapse between the events is counter-evidence of any causal connection." *Id. citing Samuelson v. Durkee/French/Airwick*, 976 F.2d 1111, 1115 (7th Cir. 1992) (noting that substantial time lapse "discounts" a causal connection between two events). Here, the decision to terminate L. Smith was made in May 2001, more than three years after he filed this litigation. *See Haywood*, 323 F.3d at 532 (one year between complaint and termination negates causal connection). Thus, L. Smith cannot establish a *prima facie* case of retaliation utilizing the direct method.

Similarly, Leydell Smith's claim fails under the indirect method. While L. Smith can establish the first two elements, that he engaged in protected activity - participation in the instant litigation- and suffered an adverse action - his termination - he cannot establish the remaining elements. L. Smith must show that he performed his job according to the Bank's legitimate expectations and he cannot.

In December 1996, the Bank transferred to Leydell Smith to a customer service liaison/float analyst. In this position his primary responsibilities entailed processing missing or missent checks. Specifically, L. Smith received bundles of unidentified checks from different Bank departments, obtained documentation to identify the location to which they should be directed, sent the checks to the Check Adjustment unit for further research if necessary, and maintained a log of the checks he received and released. Office procedure required L. Smith to process missing or missent checks he received in one day.

On approximately May 17, 2001, Leydell Smith began an approved leave. On May 21, 2001, while he was on leave, Manager LaVernis Williams received a telephone call from a representative

from Harris Bank inquiring about a bill received from the Reserve Bank. In researching the dispute, William asked Leydell Smith's supervisor for access to L. Smith's log of contacts to determine L. Smith's previous contact with Harris Bank regarding the bill in question. Williams subsequently asked the employee filling in for Leydell Smith during his absence to retrieve documentation regarding the dispute from L. Smith's desk. When that employee failed to promptly return, Williams went to Leydell Smith's desk to inquire about the delay, and was informed by the employee that she (the employee) found several bundles of unprocessed checks amongst L. Smith's papers. After reviewing the checks, Williams determined that the checks were old unprocessed checks, and she began searching Leydell Smith's desk for other checks. Williams found several more bundles of unprocessed checks in his desk drawers, behind his computer monitor, and underneath papers on L. Smith's desk. Upon researching the check bundles, Williams determined that some of the checks were several months old, with checks dated in September 2000. Included in the found bundle of checks, Williams found checks that had been missing since early April 2001, and that she had questioned Leydell Smith about on several different occasions. Leydell Smith had told Williams that the checks had not been returned to him.

Williams informed the Reserve Bank Vice President, who was head of the Check department, about the missing checks. L. Smith's supervisor's contacted him regarding the recovered bundles of checks. After discussing the issue, they informed L. Smith that he would be suspended with pay while they conducted an investigation into the matter. After determining that Smith failed to process the checks in one day, in contravention to Department policy, Leydell Smith's supervisors recommended that he be discharged because of failure to timely process missing and missent checks. The Bank terminated Smith on May 31, 2001. Along with failing to demonstrate he was meeting

17

the Bank's expectations, Leydell Smith fails to provide evidence of comparable employees who engaged in similar infractions and received lesser discipline. *See Franklin v. City of Evanston*, 384 F.3d 838, 847 (7th Cir. 2004)(to prove that two employees are similarly situated in the discipline context, plaintiff must establish that comparatives engaged in similar conduct.). Accordingly, Smith's claim of retaliatory discharge fails.

## VI. Frances L. Smith[4]

Frances Smith ("F. Smith") also alleges several timely incidents of race discrimination. She alleges that she was discriminatorily denied: (a) a promotion to an Applications Unit Manager in February 1994; (b) a promotion to Applications Unit Manager/ Senior Examiner in April 1994; and © a Senior Editor position in January 1998. Additionally, F. Smith claims she was denied grade increases that went to allegedly similarly situated comparatives in 1995, and between 2001 and 2003. Frances Smith further claims that she was held to a different standard, denied alternative work schedules, and denied mentoring based on her race.

### A.    Failure to Promote

Frances Smith alleges that she was denied promotions to three specific positions: (I)

---

[4] Plaintiffs F. Smith and Baylie submit statistical evidence which they allege evidences a "pattern and practice" of the Bank's discrimination based on race and/or sex and provides direct evidence of such discrimination. Defendant's have filed a motion to strike this evidence, discussed *infra*. Nonetheless, A pattern and practice claim cannot survive in this case. When a plaintiff files an individual claim, rather than a class action, the plaintiff's "evidence of a pattern and practice can only be collateral to evidence of specific discrimination against the actual plaintiff." *Gilty v. Village of Oak Park*, 919 F.2d 1247, 1252 (7th Cir. 1990). Further, the burden for establishing pattern or practice claims is high, and here plaintiffs do not present evidence that the employees included in the statistical analysis were similarly situated to L. Smith or Baylie and are samplings of comparable employees that establish direct evidence of a claim of discrimination. Such generic statistical evidence cannot create a material issue of fact because it does not specify person similarly situated to Frances Smith or Baylie. *Balderson v. Fairbanks Morse Engine Div. Of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003).

Applications Unit Manager in 1994; (2) Applications Unit Manager/Senior Examiner in April 1994; and (3) Senior Editor in January 1998. F. Smith further claims that she was discriminatorily denied grades increases.

F. Smith claims that the Applications Unit Manager position went to Roman Strelzcheck and the Senior Editor went to Steven Van Beyer, both Caucasian employees. Beyond arguing that they received the positions because of their race, F. Smith has not shown that the Bank treated similarly situated employees outside of the protected class more favorably. She does not make the required showing, that her "comparables" were similarly situated in all respects. *Spath*, 211 F.3d at 397. Strelcheck and Van Bever were in higher grades than Frances Smith. A failure to offer such "comparables" dooms a plaintiff's Title VII claim and obviates the need to address his particularized allegations of disparate treatment. *Peele*, 288 F.3d at 331.

The second claim fails for the Applications Unit Manager/Senior Examiner position because Frances Smith does not know who else applied for the position and who ultimately received the position. Because she is unaware of the successful candidate for the second position, she does not know their educational backgrounds or their work or performance histories, and thus, cannot establish a *prima facie* case of discrimination. *See, e.g. Id.*

i. Art Zaino's promotion to Grade 14

In November 1995, Art Zaino (Caucasian), a grade 13 Review Examiner was promoted to grade 14. Frances Smith confronted her manager regarding the Zaino's promotion. Her manager explained that Zaino was promoted because he occasionally performed field work, and F. Smith did not. The manager further explained that field work was required to earn a promotion. In 1995, both Zaino and F. Smith held the same grade, however, beyond that respect Frances Smith fails to present

19

evidence that Zaino was similarly situated to her. As stated previously, in comparing a discrimination plaintiff's treatment to other employees, "the plaintiff must show that the 'comparables' are similarly situated in all respects. *Spath*, 211 F.3d at 397. This includes job title, grade, performance, qualifications, experience and/or seniority. *Radue*, 219 F.3d at 617-18. F. Smith fails to offer any other evidence demonstrating that Zaino was a comparable employee.

ii. Field Examiner Promotions

Frances Smith also claims that certain Bank employees - Levandowski, Flickinger, Keller - received grade increases and/or promotions between 2001 and 2003, that were denied to her because of discriminatory reasons. F. Smith, however, cannot establish a *prima facie* case of discrimination. First, F. Smith does not proffer evidence of these employees qualifications or that she met the requirements for the positions. F. Smith does not proffer their educational backgrounds or their work or performance histories, reflecting that these are comparables that are similarly situated. *See e.g. Spath*, 211 F.3d at 397. In addition, in order to establish a material adverse action in the failure-to-promote context, the plaintiff must show that he was rejected for that position. *Grayson*, 317 F.3d at 748. Frances Smith acknowledged that she never applied for the team leader positions attained by Levandowski and Flickinger, thus she was never rejected for these promotions. Further, with respect to Keller's promotion, F. Smith acknowledged that she does not know what job Keller received, nor could she identify the job requirements for the position attained by Keller. Therefore, Frances Smith cannot show that she met the requirements for the position. "The comparisons are meaningless absent some information concerning the hiring criteria for these positions." *Bennet*, 295 F.3d at 696.

20

## B. Demotion Claim

When the Bank implemented a new grading system in 1995, Frances Smith claims she was discriminatorily demoted because her grade 61, Review Examiner classification became a grade 13, instead of translating to a grade 15, as other Caucasian employees who were previously a grade 61. To demonstrate a demotion, F. Smith must show that she faced "significantly diminished responsibilities" in her new position. *Traylor,* 395 F.3d at 788-789. F. Smith, however, fails to demonstrate that her position responsibilities, salary, or benefits were affected. *See Crady v. Liberty Nat. Bank and Trust,* 993 F.2d 132, 135-136 (7th Cir. 1993)(affirming summary judgment against plaintiff where transfer to new position did not involve less significant responsibilities or change in salary of benefit). Frances Smith further claims, that other Review Examiners at grade 61 were upgraded to higher levels than she was. F. Smith, however, fails to offer facts demonstrating that she was similarly situated to employees who were upgraded to higher levels, by identifying their qualifications or experience. *Radue,* 219 F.3d at 617-18.

Frances Smith further argues that the alleged demotion to a grade 13 after the restructuring of the grades, relegated her to position where she was unable to apply for leadership position. Specifically, the Bank permitted officers and senior staff, grade 14 - 16, in the Bank's S&R Department to apply for leadership position, and because F. Smith was a grade 13, she was ineligible to apply for the positions. First, Frances Smith fails to identify any of the leadership positions, thus, she fails to show that she would meet the requirements for these leadership positions. *Bennet,* 295 F.3d at 696. Further, F. Smith fails to offer comparables indicating that she was similarly situated to individuals who received the leadership positions. *See Radue,* 219 F.3d at 617-18. Lastly, Smith does not identify similarly situated non-protected employees who were treated differently and

permitted to apply to these leadership positions with a lower grade.

## C. Other Claims of Discrimination

With regard to Frances Smith's miscellaneous claims of discrimination, she fails to Smith to show that any material harm resulted from these actions, and thus fails to establish a *prima face* case. *Traylor*, 295 F.3d at 788-89. F. Smith claims that she was required to multitask while working on various projects, while her Caucasian peers were allowed to work one project at a time. F. Smith has no evidence of this, however, and does not identify similarly situated Caucasian employees who were treated differently.

Frances Smith also claims that she was discriminated against on the basis of her race with regard to her work schedule. First, she claims that she was unable to work from home while recuperating from surgery. In contrast, her co-worker Melissa Goodwin, Caucasian, was offered the opportunity, without requesting, to work from home while recovering from surgery. Additionally, Smith states that the only time she requested to work from home her manager permitted her to do so. Frances Smith further alleges she was not permitted to work flex time and alternative work schedules. In both instances, F. Smith fails to allege an adverse employment action. *Id.* The Seventh Circuit has explained "Title VII simply was never intended to be used as a vehicle for an employee to complain about the hours she is scheduled to work or the effect those hours have upon the time an employee spends with family members." *Grube v. Lau Indus. Inc.*, 257 F.3d 723, 728 (7th Cir. 2001). Further, Smith fails to proffer evidence that any other similarly situated non-protected employees were treated differently.

Frances Smith claims that she and other African-Americans were required to make presentations to the staff after attending special meetings whereas Caucasian employees were not

required to do so. F. Smith also claims that African-Americans were held to more stringent deadlines. Smith fails to show that any material adverse employment change resulted from these actions. *Traylor*, 295 F.3d at 788-89.

Frances Smith next claims that she was discriminatorily denied mentoring, unlike her Caucasian peers. A discriminatory denial of job-related training can constitute an adverse employment action, so long as it results in a material adverse change in employment that is more disruptive than a mere inconvenience or alteration of job responsibilities. *Pafford v. Herman*, 148 F.3d 658, 667 (7th Cir. 1998)); *Volovsek v. Wis. Dept. of Agr., Trade and Consumer Prot.*, 344 F.3d 680, 688 (7th Cir. 2003). If a failure to train rises to the level of an adverse employment action, the plaintiff must demonstrate that: (1) she is a member of a protected group; (2) the employer provided training to its employees; (3) she was eligible for training; and (4) she was denied training given to other similarly situated employees who were not members of the protected group. *Pafford*, 148 F.3d at 667. Frances Smith failed to apply for the Bank's formal mentoring program established in 1999. Further, she acknowledges that another African-American male in the department received mentoring. F. Smith fails to offer evidence that her alleged lack of mentoring resulted in an adverse employment action. *Traylor*, 295 F.3d at 788-89.

Frances Smith claims she was discriminated against on the basis of race when Woos (Caucasian) was assigned to prepare comment letters that discussed regulations and other issues, upon the resignation of the individual responsible for drafting the comment letters. F. Smith alleges that she should have been considered for the position, because she had previously assisted with drafting comment letters. According to F. Smith, she expressed her interest in the position to the Vice-President assigning the position. The failure to assign Frances Smith to the comment letter

23

duties does not constitute a material adverse employment action under *Traylor*, 295 F.3d at 788-89, because there is no evidence that her salary, benefits, grade or title were affected. Moreover, F. Smith does not present evidence that Woos received a promotion or compensation for taking on the comment letter duties.

Lastly, the remaining miscellaneous actions that Frances Smith claims were discriminatory also did not cause any material harm, and F. Smith alleges no similarly situated white employees who were treated differently. She believes that her receipt of a draft performance of "effective" in 2001 and 2002 was discriminatory. F. Smith also claims that her supervisor was "abrupt with her" and accepted negative criticism about Smith from her coworkers. "A supervisor's assessment of an employee's skills is not an adverse employment action." *Bragg v. Navistar Int'l Transp. Corp.*, 164 F.3d 373, 378 (7th Cir. 1998). Further, Frances Smith proffers no evidence that negative comments or her supervisor's attitude affected F. Smith's reviews or resulted in material harm. *See, Grube*, 257 F.3d at 729 ("[U]nfair reprimands or negative performance evaluations, unaccompanied by some tangible job consequence, do not constitute adverse employment actions").

Frances Smith also claims that interpersonal conflicts and lack of support between she and her co-workers evidence discriminatory animus. Specifically, she alleges that she had a conflict with her co-worker after volunteering to assist the co-worker on a project and a manager had to intercede to resolve the conflict. F. Smith further alleges that her co-workers fail to offer assistance when she has a heavy workload. While these incidents may evidence a lack of a supportive or appreciative work environment, Smith does not show that any material harm resulted from these actions, and thus she fails to state a *prima facie* case. *Traylor*, 295 F.3d at 788-89.

## VII. Eleanor Baylie

Baylie also alleges several timely incidents of discrimination based on either race, gender, or age with regard to several promotions. Baylie alleges that she was discriminatorily denied a promotion to: (a) an Assistant Control Specialist position in 1994; (b) an Information Analyst position in 1994; (c) a Production Coordinator position in 1997; (d) an EAC Coordinator position in January 2001; and (e) a Conflict of Interest Coordinator position in 2002.[5] Baylie also claims that, on account of either race, gender, or age she loss job responsibilities, was demoted, had to assume additional responsibilities, or was denied training. Baylie also fails to establish a *prima facie* case of discrimination.

### A. Failure to Promote[6]

#### (I) Assistant Control Specialist/Information Analyst

Baylie first claims that she was rejected from both the Assistant Control Specialist position and the Information Analyst position in 1994, on account of her race. Baylie, however, cannot make out a *prima facie* case of discrimination here because she does not know the race, job history, or performance history of the other applicants for either position. Further, Baylie does not offer evidence of the educational or performance qualifications or work history of the successful applicants, and thus cannot show that their "comparables are similarly situated in all respects." *Spath*, 211 F.3d at 397.

---

[5] The Bank also discusses an Examiner Support Coordinator position presented in Defendant's 56.1(a)(3) Statement of Facts, which is the subject of Baylie's motion to strike. See discussion *infra*.

[6] Similar to plaintiff Frances Smith, Baylie argues the use of statistical evidence to demonstrate the Bank's "pattern or practice" of discrimination which the Court finds cannot create a material issue of fact. *Balderston*, 328 F.3d at 320.

(ii) Production Coordinator

Next, Baylie claims that she was rejected from the Production Coordinator position, grade 12, in 1997 on the basis of her age, gender, and race. Baylie, along with two are other candidates: Steve Sliwinski (younger white male) and Zoriana Kurzeja (younger white female), were interviewed for the two available positions. The two other applicants were selected over Baylie. Baylie alleges that the manager interviewing candidates for the position referenced her retirement during her interview demonstrating direct evidence of discrimination based on her age, and on another occasion mentioned that Sliwinski resembled one of the Blues Brothers, which Baylie contends demonstrates racial animus. With regard to the comments, the Court does not find an innocuous comment regarding an applicant's resemblance to the Blues Brothers as direct evidence that the manager based the employment decision on the applicant's race. In addition, the manager's alleged single reference to Baylie's retirement does not by itself demonstrate direct evidence that discrimination based on age influenced the manager's decision in Baylie receiving the promotion. *See Pitasi v. Gartner Group, Inc.*, 184 F.3d 709, 725 (7th Cir. 1999)(explaining that single question regarding retirement plans does not necessarily show age related animus). Additionally, Baylie's subjective self-appraisal that she was qualified for the position cannot by itself create a genuine issue of fact. *Dunn v. Nordstrom*, 260 F.3d 778, 787 (7th Cir. 2001). Further, Baylie does not make the required showing, however, that her "comparables" were similarly situated to those employees in all respects. *Spath*, 211 F.3d 392 at 397. The employees that Baylie argues were similarly situated, in fact, were not because Sliwinski, grade 12, and Kurzeja, grade 13, were in higher graded positions than Baylie. Moreover, Baylie fails to establish a *prima facie* case of gender discrimination because one of the applicants selected for the position is female.

26

### (iii) Employee Activity Coordinator

Baylie further claims discrimination for a rejection of a promotion to an Employee Activity Council Coordinator ("EAC") position in 2001. Baylie's race and age claims fail for two reasons. Baylie argues that she was discriminated on the basis of race because Charmaine Cerveny (Caucasian, younger employee) was offered the position. Baylie's *prima facie* race claim fails because although Cerveny was initially offered the position, Cerveny rejected the offer and an African-American applicant Jamica Quinlan was awarded the position. Next, Baylie's *prima facie* age discrimination claim, along with the race discrimination claim, fails because Baylie has not shown that either of these employees were similarly situated to her. Specifically, Baylie fails to demonstrate that she was similarly situated to either Cerveny or Quinlan with regard to job title, grade, performance, qualifications, experience, and/or seniority. *Radue*, 219 F.3d at 617-18.

### (iv) Conflicts of Interests position

Lastly, Baylie also claims that the Bank failed to promote her to a grade 12 Conflict of Interests position in January 2002 based on racial and age animus. Although, Baylie identifies the successful applicant, Deborah Armstrong as Caucasian and younger than Baylie, Armstrong was not similarly situated because they were at different grade levels and positions.

### B.    Other Allegations of Discrimination

Baylie also alleges that she was discriminated against because she held additional job responsibilities at grade 9. Baylie claims that the responsibilities were taken away and Caucasian, male, or younger employees received grade increases for maintaining the same responsibilities that she held at grade 9. Specifically, Baylie alleges the Bank removed: (I) Document Manager Responsibilities in 1996; (ii) Best Modules responsibilities; (iii) Special Warehousing project;

27

(iv)Business Resumption Responsibilities; (v) Time Tracking Responsibilities; (vi) Transfer of Business Resumption Responsibilities. None of these actions constitute materially adverse employment actions as a matter of law because no material harm resulted from the changed responsibilities. *Traylor*, 295 F.3d at 788-89. The removal and failure to assign Baylie certain projects does not constitute material adverse employment because there is no evidence that Baylie's salary, benefits, grade or title were affected. Further, Baylie cannot show that she was similarly situated to the employees chosen for these tasks because Baylie does not know their work history, educational background, or other qualifications. *Radue,* 219 F.3d at 617-18. In addition, with regard to the Document Manager position, maintaining the BEST modules responsibilities, the Business Resumption responsibilities, and the Time Tracking System Responsibilities, Baylie fails to identify the job requirements, thus Baylie is unable to demonstrate that she was similarly situated with the hired employees and performing the same job responsibilities at a lower grade. *Bennet*, 295 F.3d at 696. Baylie also claims a demotion with respect to her being transferred to a Special Warehousing project for several months while another employee was on leave in 1998. Baylie argues that the warehouse assignment entailed clerical work and she was substituting for an employee, grade 5. As stated previously, Baylie fails to demonstrate that this transfer was a materially adverse change as her grade and salary remained unchanged during the temporary assignment. *Traylor*, 295 F.3d at 788-89. Further, Baylie fails to identify other similarly-situated employees in an unprotected class who were treated differently.

In March 2003 Baylie lost responsibility for managing the business resumption plan after maintaining responsibility for the plan since 2000. The Bank transferred the business resumptions functions to Elizabeth Coons, grade 11, and Julie Kennada, grade 12. Again, Baylie is unable to

demonstrate that she was similarly situated with the employees the function was transferred to and performing the same job responsibilities at a lower grade.

### C. Denial of Training

Baylie claims she was denied BASE training in 2002, a training opportunity that was given to two other Caucasian employees. Baylie also claims that she was not mentored. Baylie has not alleged that any of these actions materially affected her employment, and Baylie cannot show that similarly situated non-African American employees were treated differently. Further, Baylie does not make the required showing that her "comparables" were similarly situated to the employees offered training. *See Spath,* 211 F.3d 392 at 397. Baylie also argues discrimination based on race because she received "lump sum" payments after her annual reviews instead of annual increases. Baylie has not alleged that any of these actions materially affected her employment, and Baylie cannot show that similarly situated non-African American employees were treated differently. Finally, Baylie does not show that she was held to a different standard than similarly situated Caucasian employees.

### VIII. Motions to Strike

There are several motions to strike pending with regard to this Summary Judgment. Plaintiff Baylie has filed a motion to strike Defendant's Rule 56.1 ¶ 50 -68 on the grounds that documents and statements relied upon in Defendants 56.1(b) Statement of Facts were not available to Baylie because they were exclusively in the possession of Defendant and not produced in discovery. Defendant's have filed a motion to strike several of Plaintiffs Frances Smith and Baylie's 56.1 responses and statements of additional facts on the grounds that (1) they fail to meet the requirements of Fed. R. Evid. 1006 use of charts and summaries; (2) the summaries are unauthenticated and

inadmissible and (3) failed to include specific references to the record. None of the challenged documents, if considered, would be sufficient to save any of the claims dismissed by this order. Additionally, even without evaluation of facts presented in Defendant's 56.1(b) Statement of Facts, the Court would find that Plaintiff's fail to create a prima facie case of discrimination. Both these motions are moot because the Court has found that Plaintiffs each failed to present a *prima facie* case of discrimination. As such, the Court would grant the Bank's summary judgment motions regardless of the motions to strike.

## IX. Conclusion

Due to the foregoing analysis, this Court finds no genuine issues of material fact have been raised by Leydell Smith, Frances Smith, and Baylie, and the Court GRANTS summary judgment in favor of the Reserve Bank with respect to each of these Plaintiffs.


IT IS SO ORDERED.


_3/31/06_
Dated

The Honorable William J. Hibbler